Scott, J.
The present controversy is in regard to the proper distribution of a fund in the hands of a receiver, appointed in this case by the court of common pleas of Pickaway county, on the motion of the plaintiff, Moore. The fund arose from the rents of lands, under a lease made by the receiver, pursuant to an order of the court.
The main facts of the case, so far as they bear on the question of distribution, are as follows :
September 3, 1855, Eletcher Rittenhouse, having. previously purchased from Solomon M. Baker 450 acres of land, *311 of which about 344 acres lay in Pickaway county, and 106 acres in Ross county, and having received from Baker a deed of conveyance therefor, executed to Baker a mortgage on the entire tract, to secure the payment of seven promissory notes, each for $2250 with interest, the first of which was payable March 4,1858, and the others at intervals of a year respectively ; the aggregate amount of the notes being a residue of purchase money for the land. The mortgage was duly recorded in Pickaway and Ross counties.
On the 3d of March, 1856, James Emmitt recovered a judgment in Ross common pleas against Rittenhouse for $1730,43, with ten per cent, interest, and defendant gave notice of appeal.
March 20,1856, Emmitt sued out execution on his judgment, directed to the sheriff of Pickaway county, which, on the 24th of the same month, was levied on that part of said lands which lay in Pickaway county, and the levy was duly entered by the sheriff in his book of foreign executions. On the 29th of the same month, Rittenhouse perfected his appeal, and on the 31st, the sheriff of Pickaway county returned the execution.’
On the 3d of March, 1856, being the same day that Emmitt’s judgment was entered up, Tilghman Porter also obtained judgment against Rittenhouse, in Ross common pleas, for $902.50 with ten per cent, interest, on which execution was sued out, on the 20th of the same month, directed to the sheriff of Pickaway county, by whom it was received on the first of April, and immediately levied on that part of said lands which lay in his county, and subsequently returned without further proceedings, by'order of the plaintiff.
On the 31st of March, 1856, Moore, the plaintiff, obtained judgment in Franklin county common pleas against Rittenhouse and others, for $2661.61, upon which execution was forthwith issued, and levied April 1, 1856, on that part of the same lands which lay in Pickaway county.
On the 27th of May, 1856, Moore filed his original petition in this case in Pickaway common pleas, making Rittenhouse *312 and Holderman the only parties defendant. In this petition Moore states his judgment, alleges that Rittenhouse has no property subject to levy. That the land is insufficient to satisfy Baker’s mortgage. That Rittenhouse is insolvent; is in possession of the mortgaged premises, and entitled to the rents and profits until condition broken; that Rittenhouse has leased part of the premises to Holderman; and prays that the equitable interest of Rittenhouse may be sold by order of the court, and that the proceeds, together with the rents due, or to become due from Holderman may be applied in satisfaction of his judgment.
At the June term of the court, 1856, on the motion of Moore a receiver was appointed, with authority to take possession of and rent the land.
December 26, 1856, judgment was rendered in the district court of Ross county in favor of Emmitt against Rittenhouse, on the appeal, for the full amount, with statutory penalty and costs; and the case was remanded to the common pleas for execution, etc.
January, 2é, 1857, Moore filed an amendment to his petition, making Baker (the mortgagee), Emmitt and Porter also parties defendant. In this amendment he sets up his levy on the land in Pickaway county, also the levies under the judgments of Emmitt and of Porter; charges that Emmitt’s prior levy was rendered void by the subsequent appeal of Rittenhouse to the district court; that both Emmitt and Porter have liens upon real estate in Ross county sufficient to satisfy their respective judgments; and prays that they may be restrained from selling the lands lying in Pickaway county till they shall have exhausted their liens in Ross county; that Emmitt’s levy be set aside, that the premises may be sold subject to Baker’s mortgage, and the proceeds be brought into court to abide its further order.
On this amended petition summons was issued and served on Emmitt, January 28, 1857.
Shortly before the filing of this amended petition, to-wit: on the 21st of January, 1857, Emmitt had, by petition in the *313 court of common pleas of Ross county, instituted an action against Moore, Rittenhouse, Porter, Baker, and the receiver, in which he stated the foregoing facts and proceedings, asserted the priority of his lien, under his levy; his want of knowledge of Moore’s proceeding, and of the appointment of the receiver when the same took place, not being a party thereto, and having no notice thereof; and asked that the receiver might, by injunction, be restrained from renting the land, and that the same might be ordered to be sold, etc.
On this petition an injunction was allowed, and summons, and notice of injunction were served, January 22d, on Moore, Baker, and the receiver.
In this condition of things, on the 7th of February, 1857, an agreement was entered into, in writing, between Moore and the attorneys of Emmitt and of Porter, providing, in substance, for the withdrawal of all objections to the renting of the premises by the receiver for the current season, and stipulating that any lease made by the receiver pursuant to the agreement should be respected and protected in any sale which might be made of the premises under the judgments or at the suits of either of the parties; and that the fund arising from such renting by the receiver should remain in his hands to await the order of the court as to distribution.
The receiver proceeded to rent the land, and received on account of rents the sum of $ , which remained in his hands for distribution.
February 22,1858, the court of common pleas of Pickaway county ordered the receiver to pay over this fund to Moore, to be applied on his judgment.
From this judgment and order Emmitt appealed to the district court, in which, on the 18th of May, 1858, he filed his answer to Moore’s original and amended petitions. In his answer he recites the previous proceedings, and asserts the priority of his lien, and denies that he has a lien on other property; he also affirms the continued existence of his lien under his levy, notwithstanding the appeal. He recites the fact of his filing his petition in Ross common pleas, to restrain *314 the proceedings of Moore, — the allowance of an injunction, the service of summons and notice upon Moore, and the agreement aforesaid between his counsel and Moore, and alleges that when said agreement was . made, the parties further agreed that no action of the court should be had on the question of distribution, without previous notice to all parties interested; but, that notwithstanding this agreement, Moore procured an order of distribution to be made by the court of common pleas in his favor, in the absence of the respondent and without notice to him or his counsel, and in violation of the agreement of the parties. He farther states that Baker8 the mortgagee, has foreclosed his mortgage, and procured the sale of the mortgaged premises, and that the proceeds of the sale were insufficient to discharge the mortgage debt, and prays that the fund, arising from rents, in the hands of the receiver may be applied to the satisfaction of his judgment.
To this answer there was no reply; but on the 23d of June, 1859, the plaintiff, Moore, filed in the district court a further amendment to his petition — in which he states that the lands are productive, that he has in equity a right to have the rents 'accruing during the pendency of the suit, and before the sale of the premises under Baker’s mortgage, applied upon his judgment — and therefore prays for the appointment of a receiver, etc. ;
The case was thereupon reserved for the decision of this court.
At the time the respective claimants of the fund in question obtained their several judgments and levied their executions issued on the same, Rittenhouse, the judgment debtor, was rightfully in possession of the land on which the levies were made, holding the legal title thereto, subject only to the lien of Baker’s mortgage. The condition of the mortgage wa3 still unbroken, so that, even as against the mortgagee, the legal title was in Rittenhouse, and as against all others it remained in him after condition broken. There can be no doubt that this legal estate of Rittenhouse was the proper subject of sale upon execution, at law, and that judgment *315 creditors could, therefore, acquire a specific lien thereon, by the levy of such execution. As neither of the judgments in this case were rendered in Pickaway county, the land of the debtor lying in that county only became bound by the levy of execution. And as the levy of Emmitt was first made, his judgment thereby acquired a priority of lien over the others. Was this lien vacated by the subsequent appeal of the judgment debtor to the district court? The provisions of the statute must furnish the answer to this question.
By section 421 of the civil code, the lands and tenements of the debtor within the county where the judgment is entered become bound for its satisfaction, ordinarily, from the first day of the term at which judgment is rendered; and all other lands of the debtor, from the time they are seized in execution.
Section 7 of the act regulating appeals to the district court provides: “ That in all cases where the party against whom a judgment is rendered appeals his cause to the district court, the lien of the opposite party on the real estate of said appellant, created by said judgment, shall not be, by said appeal, removed or vacated; but the real estate of said appellant, shall be bound in the same manner as if said appeal had not been taken, until the final determination of the cause in the district court.” S. & C. St. 1168.
The language of this section seems clearly to express an intention that the statutory security which the creditor has acquired for the satisfaction of his judgment, should remain wholly unimpaired by the appeal, and no reason is perceived for discriminating between liens created by the rendition of judgment and those arising from seizure in execution. We think the appeal did not affect the existing lien.
The necessity which required the judgment creditors to ask the intervention of equity in aid of the process of execution which the law allowed, arose not from the fact that their debtor’s estate was an equitable one, for he held the legal title, and they each held specific legal liens upon portions or the whole of his real estate; but it arose from the fact, that *316 their debtor’s legal title was incumbered by a previous mortgage executed to Baker; which, under our appraisement laws, would interfere with the sale of the premises on execution at law. Each of them had a right to invoke the equity jurisdiction of the court for this purpose. The object in such case would be, not to acquire a specific lien, but to render a subsisting legal lien effective and available, by an order for the sale of the premises subject to the lien of the mortgage. By instituting a proceeding of this kind, neither of the lien-holders could impair the priority of other similar liens, the holders of which were not made parties to the proceeding; nor could the equitable rights incident to such priority of legal lien be affected théreby.
The original petition filed in this case by the plaintiff Moore, seems to have had a two-fold purpose: first, to obtain an order for the sale of the premises subject to the mortgage which prevented the plaintiff from proceeding at law under his execution; and, secondly, to subject to the satisfaction of his judgment, a sum due or about to become due to his insolvent debtor from Holderman, for rent of a portion of the premises previously leased to him, for that season, by Rittenhouse, the debtor. In so far as the latter purpose was sought to be effected, the petition was in the nature of a creditor’s bill. Neither E'mmitt nor Porter were originally made parties to this petition, and neither of them moved in the matter until after Holderman’s tenancy had terminated, and the rent due from him had become a mere debt, unconnected with the lands which their liens incumbered. As an ordinary debt, there was nothing to prevent Holderman from paying it over to Rittenhouse, except the lien created by the creditor’s bill of the plaintiff. In regard, then, to the sum due from Holderman, we think Moore alone is entitled to the fruits of his own diligence. Neither Emmitt nor Porter ever acquired a lien upon this indebtedness nor can they, in equity, claim any part of it.
But, the main, if not the sole subject of-controversy among the several claimants, is the fund arising from the subsequent renting of the premises by the receiver.
*317 In February, 1.857, Emmitt had instituted an action in Ross common pleas, to restrain Moore from proceeding, through the receiver, to rent the premises for his own benefit; and he was, in that action, asserting and endeavoring to vindicate his rights as a prior lienholder. Moore had thereupon amended his petition, and made Emmitt and Porter both parties. The judgment lienholders being thus, for the first time, all before the court, an agreement was entered into between them, pursuant to which the receiver rented the premises for that season, the parties to the agreement reserving all questions as to their respective rights in the fund arising from such renting, for the adjudication of the court.
Up till this time the plaintiff Moore had not, either by his original or amended petition, asked that the premises should be rented by the receiver, and the rents arising therefrom be applied upon his judgment. Still he had, upon motion,' procured a receiver to be appointed and placed in charge of the premises. It was not till the case came into the district court by appeal, that the court was asked, first by Emmitt, in his answer, and then by Moore, in his subsequent further amendment to his petition, to apply the proceeds arising from rents upon their respective judgments. As the parties were all before the court, however, when the receiver began to act as such, in renting the premises, and while the rent which constitutes the fund in question was accruing, and as this action of the receiver which produced the fund was in pursuance of the agreement of all the claimants, which left their rights on distribution to be determined by the court, it can make no difference which party was first in formally asking the application of the fund to the satisfaction of his judgment. The question is rather as to the priorities of their respective equities at the time when, by their joint agreement, the measures were instituted which produced the fund. The right of the ■judgment creditors in this case to subject the rents arising from the land during the litigation, can rest only on the fact that their judgments and levies constitute specific liens upon the land, and that the premises are insufficient to satisfy these and prior *318 incumbrances. Now, as Moore’s levy was made subject to the lien created by the prior levy of Emmitt, it is clear that had the property been sold upon execution, Emmitt’s judgment must have been first satisfied. And we see no ground upon which equity can disregard this priority of legal lien. The priorities which characterize the several liens at law, must attach to the equities which arise from those liens.
Baker, the mortgagee, by his answer filed in the district court, also claims the fund, for the satisfaction of a balance of the mortgage debt remaining unpaid. But a sufficient answer to this claim is, that the condition of his mortgage was not broken till March, 1858, while the fund arose from prior rents, accruing before the mortgagee’s right of possession arose.
According to this view of the case, the fund in the hands of the receiver, in so far as it arose from the rents of that portion of the premises which is situated in Pickaway county, must be awarded to Emmitt, whose execution was first levied thereon; and as to that part of the fund which arose from rents of the lands lying in Ross county, it should he applied, pro rata, upon the judgments of Emmitt and Porter which were both entered on the same day. A decree may be entered accordingly.
Bb.ineer.hoee, C.J., and Day, White and Welch, JJ., concurred.